# Walker, Appellant, *v.* Mummert.

Argued May 26, 1958. Before JONES, C. J., BELL, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*David Freeman,* with him *Wilson H. Oldhouser,* for appellant.

*William W. Hafer,* for appellees.

OPINION BY MR. JUSTICE COHEN, November 25, 1958:

Did the incapacity of a plaintiff who was *non compos mentis* at the time he was injured toll the running of the statute of limitations applicable to his action for personal injuries?

On June 29, 1953, plaintiff was struck and injured by an automobile which was operated by the defendant Mummert, Jr., in an allegedly negligent manner. At the time of the accident the plaintiff was *non compos mentis* and confined to the Harrisburg State Hospital. His incompetency continued until December 17, 1955, on which date he was paroled from the hospital. Thereafter, on December 21, 1956, he instituted the present suit in trespass for the personal injuries suffered in the automobile accident. Judgment on the pleadings was entered in favor of the defendants on the ground that the action was barred by the applicable statute of limitations, and this appeal followed.

For over one hundred and seventy-five years the colonial statute of limitations, Act of March 27, 1713, (1 Sm. L. 76 §1), 12 P.S. §31 governed all actions brought in the courts of this Commonwealth. That act provided, *inter alia,* that all actions of trespass "shall be commenced and sued within the time and limitation hereafter expressed, and not after; that is to say . . . within six years next after the cause of such actions . . . ." However, section five of the act contained exceptions tolling the statute on behalf of persons under a disability: "If any person . . . who is or shall be entitled to any such action of trespass . . . be, or, at the time of any cause of such action given or accrued, fallen . . . non compos mentis . . . then such person . . . shall be at liberty to bring the same actions, so as they take the same within such times as are hereby before limited, after their . . . being of . . . sound memory . . . ." Act of March 27, 1713, (1 Sm. L. 76 §5), 12 P.S. §35.

Then in 1895 the legislature passed the Act of June 24, 1895, P. L. 236, §2, 12 P.S. §34 which reduced the period during which actions for personal

injuries could be brought from six years to two: "Every suit hereafter brought to recover damages for injury wrongfully done to the person . . . must be brought within two years from the time when the injury was done and not afterwards . . . ." Although the Act of 1895 made no reference to the Act of 1713; this Court held in the case of *Peterson v. Delaware River Ferry Co.*, 190 Pa. 364, 42 Atl. 955 (1899) that insofar as relevant it impliedly repealed the earlier enactment.

In the *Peterson* case plaintiff was injured while a minor and five years later an action for personal injuries was brought in her behalf. It was argued that the suit was timely because the Act of 1895 affected only section one of the 1713 statute, (which permitted actions for personal injuries to be brought within six years after the date of the occurrence of the injury), and left in full force and effect section five of that act, (which tolled the statute for incompetents). In rejecting this argument the Court stated: "The act of 1895 . . . is a general act in the nature of a statute of limitations. Its terms are general, and make no exceptions in favor of persons under disability. The settled rule is that infants as well as all others are bound by the provisions of such statutes. 'A saving from the operation of statutes for disabilities must be expressed or it does not exist.' Warfield v. Fox, 53 Pa. 382. 'There is no limitation in the act which excludes persons under disabilities. "Any person" means every person.' " 190 Pa., *supra*, at 365.

For purposes of tolling the statute of limitations, the disability of one who is *non compos mentis* cannot be distinguished from the disability of one who is a minor, and accordingly, the *Peterson* ruling would control our disposition of the present case. However, it is the position of the plaintiff herein that the *Peter-*

*son.* decision was an unfortunate one which created anomalous situations in the law. As an aftermath of that case, counsel cogently observes that every action except for personal injuries survives the period of a minor's disability. "If a minor's property is damaged, his minority tolls the Statute. If he is falsely imprisoned, his minority tolls the Statute, but if his head is broken and his legs are cut off, someone must . . . [bring suit] for him within two years or his rights are lost." Counsel therefore asks us to limit the *Peterson* case to its own facts and not to carry forward the result reached therein to a case involving another class of disabilities—insanity. "It is absurd that an insane person's property . . . [should be] protected during the period of his disability, but his person which is much more precious and necessary to him, . . . [should not]."

But if this Court in the *Peterson* case was correct in assessing the legislative intent as expressed in the Act of 1895, and the failure of the legislature in the ensuing sixty years to amend the act suggests that the Court was, then we are not at liberty to disregard the legislative will in order to obviate anomalies created by the act.

Of course, it is always unfortunate when an innocent injured party, through no fault of his own, is denied deserved compensation from a wrongdoer. On the other hand, however, the very reasons which support the establishment of a statute of limitations also militate against exceptions thereto. Thus, permitting the deferment of the institution of a personal injury claim until the end of a prospective plaintiff's period of disability seriously prejudices the person against whom suit is eventually brought. With the passage of time a defendant may be hard pressed to assert his innocence of wrongdoing, for, his evidence may

disappear or become unavailable, his witnesses scatter and die, and their memories dim. Furthermore, it is unfair to subject a defendant for an indefinite period to the threat of litigation and the fear that his plans for the future will be interfered with by liability to pay a judgment entered against him.

On balance, we believe that the established procedures for the appointment of guardians afford sufficient protection to individuals who are *non compos mentis* that their claims will be instituted within the permissible period and thereby diminishes the risk that the rights of incompetents will be impaired by our holding that their disability does not toll the running of the statute of limitations applicable to actions for personal injury.

Judgment affirmed.

---

CONCURRING OPINION BY MR. CHIEF JUSTICE JONES:

The rationale of the decision in *Peterson v. Ferry Co.*, 190 Pa. 364, 42 A. 955, is equally applicable to the question presented by the present case. The fact that *Peterson v. Ferry Co.* was concerned with the delayed suit of a person who had been under the disability of non-age, whereas the instant case involves a belated suit in behalf of a formerly *non compos mentis* person, points a factual difference which is of no presently pertinent distinguishing legal significance.

The statute of limitations of March 27, 1713, 1 Sm. L. 76, which applied to actions of trespass for injuries to the person, contained a proviso "That if any person or persons, who is or shall be entitled to any such action of trespass, . . . shall be, within the age of twenty-one years, feme covert, *non compos mentis,* imprisoned, or beyond sea, that then such person or per-

sons shall be at liberty to bring the same actions, so as they take the same within such times as are hereby before limited, after their coming to or being of full age, discoverture, of sound memory, at large, or returning into this province, as other persons."

The legislature, by Section 2 of the Act of June 24, 1895, P. L. 236, prescribed that "Every suit hereafter brought to recover damages for injury wrongfully done to the person, in case where the injury does not result in death, must be brought within two years from the time when the injury was done and not afterwards; in cases where the injury does result in death the limitation of action shall remain as now established by law" and made no provision that persons under disability should be excluded from the limitation.

In the *Peterson* case, supra, Mr. Justice MITCHELL, speaking for a unanimous court, declared, with respect to the later statute, "Its terms are general, and make no exceptions in favor of persons under disability. . . . 'A saving from the operation of statutes for disabilities must be expressed or it does not exist:' Warfield v. Fox, 53 Pa. 382. 'There is no limitation in the act which excludes persons under disabilities. "Any person" means every person. . . .' Williams v. Ivory, 173 Pa. 536." The conclusion thus arrived at obviously resulted from the fact that the Act of 1895 had not carried forward the above-quoted exclusionary clause of the Act of 1713. And, that was the provision which had theretofore operated to exclude from the operation of the statute of limitations not only minors but *non compos mentis* persons as well.

No matter how much we may differ with the reasoning of the decision in the *Peterson* case, when this court thereby construed the Act of 1895 as evidencing a legislative intent not to exclude thenceforth from the operation of the statute's limitation persons under dis-

ability, the construction became the definite and legally conclusive meaning of the act just as effectively as if the legislature had indisputably so expressed itself in plain and unmistakable terms: *Salvation Army Case,* 349 Pa. 105, 110, 36 A. 2d 479; *Lerch's Estate,* 309 Pa. 23, 28, 159 A. 868. For us now to interpret the Act of 1895 to any other end would constitute a palpable example of judicial legislation for which there is not the slightest justification since the legislature can at any time, that it sees fit, re-establish an exclusion of persons under disability from the operation of the statute of limitations. Consequently I concur in the judgment of the court.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On June 29, 1953, Dewey S. Walker, temporarily absent from the Harrisburg State Hospital, of which he was a patient, was struck by an automobile owned by Lester R. Mummert, Sr., and operated by his son, Lester R. Mummert, Jr. He was taken to the Hospital and remained there until December 17, 1955, when he was discharged as cured. On December 21, 1956, he brought suit in trespass against the Mummerts for the injuries sustained on June 29, 1953. The defendants answered and averred that the plaintiff's cause of action was barred by the Act of 1895 (P. L. 236) which requires that trespass actions be instituted within two years following the date of the alleged trespass. The plaintiff replied that he was not barred by the time limitation set out in the Act of 1895 because at the time of the accident he was *non compos mentis.* The Court entered judgment in favor of the defendants and the plaintiff appealed.

In affirming the judgment of the Court below, this Court, speaking through the majority, says: "Of course,

it is always unfortunate when an innocent injured party, through no fault of his own, is denied deserved compensation from a wrongdoer." But this sincere expression of sympathy does not help the injured party. Of course, there are situations where the law is powerless to remedy a recognized wrong, but this is not this case. As far back as 1713 the Legislature of Pennsylvania provided that where a person of unsound mind is injured, "he shall be at liberty" to bring an action in trespass against the alleged wrongdoer when he shall have recovered his sanity. (1713, March 27, 1 Sm. L. 76, Sec. 5) Were we more humane, and just, in 1713 than we are in 1958?

The Act of 1713 has never been repealed. It is true that in 1895 (June 24, 1895, P. L. 236) the Legislature reduced, from 6 to 2 years, the period of time within which trespass actions may be initiated, but it did not say in that statute or any other statute that an insane person is held to the same standard of responsibility as a sane person. Nor would it be in keeping with an enlightened humanity to so legislate. A human being without a sound mind is as helpless as a ship without a rudder, as impotent as a motor vehicle with no steering gear, and as pathetic as a bird with a broken wing. An insane person does not know his rights and knows even less how to protect them.

Of course, the law provides that guardians may be appointed for the insane, but if such guardianship does not come into being, is the abused and neglected victim further to be punished because the world has forgotten him? To penalize a demented person for what he does or fails to do is like visiting punishment upon a sleeping person for his bad dreams.

The Majority cites *Peterson v. Delaware River Ferry Co.*, 190 Pa. 364, as authority for its decision.

That case ruled that a minor is bound by the statute of limitations as much as an adult, but it said nothing about insane persons. It did say of the Act of 1895 that "its terms are general, and make no exceptions in favor of persons under disability." But such a statement, so far as the case at bar is concerned, is mere obiter dictum. We are not bound to apply to one set of facts a decision which covers a completely different set of facts.

The law should be no less correct than the signals of a lighthouse guiding a disabled ship through the night and the fog into port and safety. To beam a course which applies to weather and nautical conditions wholly different from the elements presently obtaining could send a stricken vessel onto the rocks of disaster. To apply to an insane person a set of rules which applies to sane minors is to send his ship of justice to the bottom of the sea.

There can be a vast difference between the incapacity of a sane minor and an insane person (minor or adult). In the vast majority of cases the child has living parents or is in the custody of persons concerned about his welfare. The insane person may not only be wholly alone but even wholly incapable of relating what has happened to others who may take an interest in his troubles.

The Majority Opinion says that "if this Court in the Peterson case was correct in assessing the legislative intent as expressed in the Act of 1895, and the failure of the legislature in the ensuing sixty years to amend the act suggests that the Court was, then we are not at liberty to disregard the legislative will in order to obviate anomalies created by the act."

I cannot accept the argument that "the failure of the Legislature" to overrule a decision of this Court suggests that the Legislature has approved of what

this Court has done. The writer of the Majority Opinion as well as the writer of this Dissenting Opinion served in the Legislature of Pennsylvania and I do not believe that he can recollect, as indeed I am certain I cannot, of any action or attitude of the General Assembly which would indicate that it undertakes to comb through the decisions of the Supreme Court of Pennsylvania to decide which it shall attack and which it shall let live. The General Assembly is not a super-Court and this Court should not set itself up as a super-Legislature.

When the Legislature in 1895 amended the Act of 1713 to the extent of reducing the time within which trespass actions may be brought, but in no way touched the subject of allowing persons non compos mentis to bring actions after attaining sound memory, it should be assumed that it did not intend to alter this feature of the Act of 1713. On what basis does this Court impute to the Legislature what it did not say and did not do or give any evidence of wanting to do?

The law is intended to be the essence of reason but where is the reason and where is the logic which says that the statute of limitations is tolled if an insane person's property rights are involved, but it is not tolled if he has been seriously injured? Is the law more concerned about a person's house than his body? A house may burn down and still be rebuilt, but a severed leg can never be made to grow again.

The law, of course, has progressed much since 1713, but in the respect that it protects the rights of insane persons I am constrained to say that I am more pleased with the colonial legislation than I am with this Court's legislation as manifested in the *Peterson* case, —the case which the Majority regards as controlling but which I see either as not applying at all or as an auger scuttling the ship of justice of the plaintiff in the present proceedings.