**Aaron EUBANKS**

v.

**Franklyn R. CLARKE, M.D., Jose G. Hamann, M.D., John P. Shovlin, M.D., H. M. Owens, M.D., J. Raddin, M.D., Ralph Phelleps and Norma S. Coffman.**

Civ. A. No. 76–2491.

United States District Court,
E. D. Pennsylvania.

July 1, 1977.

Judy Greenwood and Harold R. Berk, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff.

Jeffrey Cooper, Deputy Atty. Gen., Dept. of Justice, Harrisburg, Pa., for defendants.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

Plaintiff, Aaron Eubanks, brings this civil rights action for declaratory relief and damages alleging that his constitutional and state law rights were violated when he was transferred from Philadelphia State Hospital to Farview State Hospital without notice and hearing and that his incarceration at Farview denied him his right to treatment or release and his right of treatment in the least restrictive alternative. Jurisdiction is alleged under 28 U.S.C. §§ 2201, 2202, 1331 and 1343. Defendants are four doctors and a psychologist who were employed at state hospitals and a state administrator.

Plaintiff Eubanks was hospitalized under a court order of involuntary civil commitment pursuant to 50 P.S. § 4406 on August 15, 1973. From August 16, 1973 until January 18, 1974 plaintiff was a patient at Philadelphia State Hospital, a minimum security facility, and was diagnosed as schizophrenic, chronic undifferentiated type. On December 30, 1973, plaintiff was involved in an altercation with another patient in which the other patient was injured. Plaintiff was transferred on January 18, 1974 to Farview, a maximum security facility, without being notified of the reason for his transfer and without being given any opportunity to explain his conduct, to answer any charges or to confront his accusers. Plaintiff was confined at Farview until his re-transfer to Philadelphia State Hospital on August 8, 1975.

Eubanks alleges that his transfer to Farview resulted in increased restrictions on his freedom of movement, right to privacy and right to visitation; increased danger that he might be assaulted or physically injured; "decreased and more severe housing and personal hygiene conditions"; increased stigmatization; and deprivation of his right to treatment.

Defendants move to dismiss alleging that the complaint fails to state a claim upon which relief can be granted; the statute of limitations bars the action for transfer without notice and hearing; the suit is barred by the eleventh amendment; defendants are immune from liability; defendants Owens and Raddin have not been put on notice of the charges against them; and the claim for declaratory relief is moot.[1]

### I. FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

#### A. RIGHT TO TREATMENT:

Defendants claim that there is no constitutional right to treatment and that, in any event, the plaintiff does not allege facts indicating that he was not provided treatment. Speaking of the constitutional right to meaningful treatment, the Third Circuit said in *Scott v. Plante*, 532 F.2d 939 (3d Cir. 1976):

"The Supreme Court did not reach the issue in *O'Connor v. Donaldson*, [422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396], *supra.* Nor has this court considered it. It is not the kind of issue, however, which we should attempt to resolve definitively on the record that is before us. In both *Wyatt v. Aderholt*, [5th Cir., 1974, 503 F.2d 1305], *supra,* and *Donaldson v. O'Connor*, [5th Cir. 1974, 493 F.2d 507], *supra,* the matter was before the court after trial. It suffices for present purposes to say that it does not appear to a certainty that Scott would be entitled to no relief on his right to treatment claim under any state of facts he could prove in support of that claim. Thus, a Rule 12(b)(6) dismissal was improper." *Id.* at 947.

Therefore, we will not decide at this stage whether there is a constitutional right to treatment.

We discern two separate arguments in defendants' pleading challenge: first, that plaintiff's claims are not sufficiently specific; and second, that plaintiff is only claiming a denial of adequate treatment and not a total deprivation of treatment. As to the first objection, we agree that plaintiff's allegations are summary except in comparing the Philadelphia State Hospital facilities to the Farview State Hospital facilities and concluding that the latter are relatively meager. But we believe that at this stage of the lawsuit, before significant discovery, it would be inappropriate to require more of an involuntarily committed person who attacks his treatment at a mental institute. As to the

---

1. In addition, we raised the question whether transfer under § 1402(a) might be appropriate and, at oral argument, defendants moved for such a transfer. However, because we will not dismiss the claim against the two Philadelphia defendants for transferring plaintiff to Farview without notice or hearing and because plaintiff resides in Philadelphia, we believe § 1402(a) transfer would be inappropriate.

second criticism, we believe that the right to treatment encompasses the right to an adequate level of treatment. We cannot say at this stage of the proceedings that Eubanks will not be able to prove that he was denied meaningful treatment.

■ Moreover, in addition to any constitutional claim of a right to treatment, the plaintiff states a claim for a violation of his statutory right to adequate treatment. Several sections of the Pennsylvania Mental Health Act in force at the time of this action,[2] support our conclusion that Pennsylvania clearly intended to grant such a right.

Section 4406, under which plaintiff was committed, provided for court commitment:

"If, upon examination, it is determined that such person is in need of care at a facility, the examining physicians or director, as the case may be, shall immediately report to said court which may order the *commitment of such person for care and treatment.*" 50 P.S. § 4406(b) (emphasis added).

Section 4418 provided that a committed person must be released when care or treatment is no longer necessary:

"Any admission or commitment of a person under this act, shall be valid and authorize the detention of such person only for the period specified in the section under which he was admitted or committed, or, where authorized, for such period as a court may specify in its order of commitment. If no period is specified in a commitment, the *person may be detained until care or treatment is no longer necessary,* whereupon he shall be discharged, or otherwise dealt with in accordance with the provisions of this act." 50 P.S. § 4418 (emphasis added).

Section 4423 specifically grants certain rights to persons committed including the right:

"To be released as soon as care and treatment in a facility is no longer necessary." 50 P.S. § 4423(6).

Finally, section 4201 granted the Department of Welfare the power and duty:

"*To assure* within the State the availability and equitable provision of *adequate mental health* and mental retardation *services for all persons who need them,* regardless of religion, race, color, national origin, settlement, residence, or economic or social status." 50 P.S. § 4201(1) (emphasis added).

*See In re Joyce,* No. 2035–69 (Pa.Com.Pl.Ct. Allegheny County 1975), holding that Section 4201 grants the mentally retarded a right to treatment.

We believe that these sections in their totality establish a state law right to treatment or release.

## B. LEAST RESTRICTIVE ALTERNATIVE:

■ Eubanks alleges that his transfer from Philadelphia State Hospital, a minimum security institution, to Farview State Hospital, a maximum security institution, violated the doctrine of least restrictive alternative. This doctrine requires that "[t]he breadth of legislative abridgment must be viewed in light of less drastic means for achieving the same basic purpose." *Shelton v. Tucker,* 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960). Defendants argue that Eubanks has no constitutional right to be institutionalized in the setting which least intrudes on his rights and liberties.

■ Fundamental rights are implicated where the state civilly commits an incompetent person to a mental hospital which is substantially more restrictive than other state mental hospitals to which one could be sent. *Cf. Baxstrom v. Herold,* 383 U.S. 107, 113, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966). As the District of Columbia Circuit Court noted in *Covington v. Harris,* 136 U.S.App.D.C. 35, 419 F.2d 617 (1969):

---

**2.** Section 502 of the Mental Health Procedures Act, 1976, July 9, P.L. 817, No. 143, 50 P.S. § 7502, repealed, *inter alia,* sections 4406 and 4418 except insofar as they relate to mental retardation or to persons who are mentally retarded. Section 502 also suspends in part section 4201.

"[T]he principle of the least restrictive alternative consistent with the legitimate purposes of a commitment inheres in the very nature of civil commitment, which entails an extraordinary deprivation of liberty . . . . A statute sanctioning such a drastic curtailment of the rights of citizens must be narrowly, even grudgingly, construed in order to avoid deprivations of liberty without due process of law." *Id.* at 623.

See also *Stamus v. Leonhardt,* 414 F.Supp. 439 (S.D.Iowa 1976); *Davis v. Watkins,* 384 F.Supp. 1196 (N.D.Ohio 1974); *Welsch v. Likins,* 373 F.Supp. 487 (D.Minn.1974) (mentally retarded); *Lessard v. Schmidt,* 349 F.Supp. 1078 (E.D.Wis.1972) (three-judge court), *vacated and remanded on other grounds,* 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974); *Dixon v. Attorney General,* 325 F.Supp. 966 (M.D.Pa.1971) (specifically dealing with Farview); *Kesselbrenner v. Anonymous,* 33 N.Y.2d 161, 350 N.Y.S.2d 889, 305 N.E.2d 903 (1973).

■ The purpose of civil commitment in Pennsylvania is care and treatment. While such commitment involves a tremendous loss of fundamental freedoms, the state may not infringe those freedoms more than is necessary to achieve its compelling interests. We hold that, at a minimum, where a state has varying available facilities for the mentally ill which differ significantly in the amount of restrictions on the rights and liberties of the patients, due process requires that the state place individuals in the least restrictive setting consistent with legitimate safety, care and treatment objectives.

## C. TRANSFER WITHOUT NOTICE AND HEARING:

Plaintiff alleges that he was denied his fourteenth amendment right to a hearing upon transfer to Farview from Philadelphia State Hospital. Defendants claim that the Due Process Clause does not entitle an involuntarily committed mental patient to a hearing either before or after transfer from a minimum security institution to a maximum security institution even though the latter facility offers less psychiatric treatment and places more restrictions on a patient's rights, freedoms and privileges.

Eubanks' right to a hearing upon transfer to Farview depends on a two-pronged inquiry: (1) whether due process protections apply, i. e., whether a liberty interest within the meaning of the Due Process Clause is implicated; and if so (2) whether due process requires that there be a hearing. *See, e. g., Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

■ A liberty interest may be rooted in the Constitution or in state law. *See, e. g., Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). As is apparent from our previous discussions on least restrictive alternative, we find that constitutional liberty interests are implicated in transfers from minimum to maximum security state mental hospitals.

In *Meachum v. Fano, supra,* and *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), the Supreme Court found that absent some right or justifiable expectation rooted in state law, no due process liberty interest was implicated where a state prisoner was transferred to a prison with substantially less favorable conditions.[3] These decisions were based on the fact that a prisoner has no guarantee of being in one prison instead of another because confinement in any of the state's institutions is authorized by the conviction.

■ By contrast, involuntarily committed mental patients who have committed no crimes have a right to be institutionalized in the least restrictive available setting. Since Eubanks had a right to remain at a minimum security institution unless legitimate safety, care and treatment objectives dictated otherwise, liberty interests are implicated and due process applies.

---

**3.** *Montanye* held that constitutional liberty interests were not implicated even where a state prisoner was transferred to a prison with substantially less favorable conditions for disciplinary reasons.

We further find that Eubanks' transfer to Farview without a hearing violated the requirements of due process. In *Dixon v. Attorney General,* 325 F.Supp. 966 (M.D.Pa.1971), the court specifically dealt with a challenge to incarceration at Farview. The court found "that it is unnecessary to have special maximum security facilities for civil patients; that confinement in a maximum security institution is adverse to rehabilitation; and that, at worst, a comparatively small proportion of criminally insane persons should be committed to maximum security institutions such as Farview." *Id.* at 970. The court held that a full panoply of due process rights must be extended to the members of the plaintiff class which the state seeks to commit involuntarily. In addition, the case required that no commitment be authorized at Farview absent a specific finding by a court, based on a preponderance of the evidence, that placement at Farview is necessary. The Commonwealth was given the burden of proving that there is not a less restrictive facility to which the patient could be committed. *Id.* at 974. We conclude that the analysis in *Dixon* mandates a "specific finding" when a person is placed in a maximum security institution such as Farview regardless of whether that placement is made upon initial commitment or by transfer from a less restrictive facility.

The need for a hearing is particularly great where the transfer, as here, is made because the patient was allegedly responsible for an altercation. We agree with the District of Columbia Circuit Court that a due process hearing is especially appropriate where a specific factual determination that the patient committed a crime is a basis for the transfer decision. As the court stated:

"[B]ecause of the consequences of that [transfer] decision to patients . . ., some minimal degree of due process is required in order to make as certain as the hospital authorities reasonably can the correctness of their decision." *Jones*

*v. Robinson,* 142 U.S.App.D.C. 221, 440 F.2d 249, 251 (1971).

*See also Williams v. Robinson,* 139 U.S.App. D.C. 204, 432 F.2d 637 (1970).

Finally, we believe that a due process hearing is also mandated because of state decisional law. In *Commonwealth ex rel. DiEmilio v. Shovlin,* 449 Pa. 177, 295 A.2d 320 (1972), the court implicitly found that mental patients have a liberty interest in transfers from minimum to maximum security institutions and specifically interpreted 50 P.S. § 4416 to require a hearing before such transfers. The court stated:

"If . . . the recommendation is that the individual should be transferred from a minimum to a maximum security (state) institution, the Commonwealth must establish at a hearing that the individual's conduct is so potentially dangerous that he cannot be treated at the institution for civil committees, and that his illness could be beneficially treated only at a maximum security institution. See *Williams v. Robinson,* 139 U.S.App. D.C. 204, 432 F.2d 637 (1970); *People v. Lally,* 19 N.Y.2d 27, 277 N.Y.S.2d 654, 224 N.E.2d 87 (1966)." *Id.* at 181 n. 7, 295 A.2d at 323.

Thus, we hold that the Due Process Clause of the fourteenth amendment entitles an involuntarily committed mental patient to a hearing when transferred to a hospital where the conditions are substantially more restrictive.

## II. STATUTE OF LIMITATIONS

Defendants contend that the statute of limitations bars the action for transfer without notice and hearing. The controlling statute of limitations in an action pursuant to 42 U.S.C. § 1983 is the most analogous one provided by state law. *O'Sullivan v. Felix,* 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980 (1914); *Polite v. Diehl,* 507 F.2d 119 (3d Cir. 1974). In this case, Pennsylvania law mandates a two year statute of limitations. *See* 12 P.S. § 34[4]. Defend-

---

4. 12 P.S. § 34 provides in relevant part:

"Every suit hereafter brought to recover damages for injury wrongfully done to the

person, in cases where the injury does not result in death, must be brought within two years from the time when the injury was done . . . ."

ants assert that since plaintiff's transfer occurred on January 18, 1974, the filing of this suit on August 6, 1976 was untimely. Defendants rely on the fact that in Pennsylvania the statute of limitations is not tolled by reason of mental incompetency. *Walker v. Mummert,* 394 Pa. 146, 146 A.2d 289 (1958).

Plaintiff argues that this court should fashion its own federal tolling provision because in this case the state statute of limitations effectively denies a right granted by federal law.[5] To decide this issue we must determine first whether a federal court may ever create a tolling provision in a civil rights action. If a federal court has such a power, we must decide whether tolling is appropriate on the specific facts of this case.

The need to protect federal rights by fashioning federal tolling provisions has been recognized by the Supreme Court. In *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), a case involving an equity claim under the Federal Farm Loan Act, the Court tolled the borrowed state statute of limitations during the period the plaintiff had not discovered the alleged fraud to protect the enforcement of federal equitable rights. Judge Friendly, writing for the Second Circuit in *Moviecolor Limited v. Eastman Kodak Co.,* 288 F.2d 80 (2d Cir. 1961), stated that the principle of *Holmberg* was not limited to cases in equity. The court in *Moviecolor Limited* tolled the borrowed state statute of limitations for the period of fraudulent concealment in a treble damages action under the Clayton Act on the theory that Congress would have preferred uniformity on this issue with respect to the right it had created.

A comparison of *Burnett v. New York Central Railroad Co.,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) with *Int'l Union v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), is helpful for delineating some general principles about federal tolling provisions. The Court in *Burnett* held that the bringing of a timely action under the Federal Employers' Liability Act in a state court where venue was improper served to toll the FELA statute of limitations. The test was "whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances." *Id.,* 380 U.S. at 427, 85 S.Ct. at 1054. The Court pointed out that the "policy of repose, designed to protect defendants, is frequently outweighed, however, where the interests of justice require vindication of the plaintiff's rights." *Id.* at 428, 85 S.Ct. at 1055. After weighing the equities involved, the Court concluded that Congress did not intend the statute of limitations to bar this plaintiff who "has not slept on his rights." *Id.* at 429, 432–34, 85 S.Ct. at 1055.

In *Hoosier Cardinal Corp.,* the Court declined to create a uniform federal statute of limitations for § 301 of the Labor Management Relations Act and refused to fashion a federal tolling provision for the borrowed state statute of limitations during the pendency of a prior similar state action. As to the decision not to create a federal statute of limitations, the Court recognized "that there are problems so vital to the implementation of federal labor policy that they will command a high degree of inventiveness from the courts." *Id.* 383 U.S. at 701, 86 S.Ct. at 1111. However, the Court determined that a "[l]ack of uniformity in this

---

**5.** Plaintiff also argues two theories of compliance with the state statute of limitations. First, plaintiff asserts that the Pennsylvania Supreme Court was wrong when it held that mental disability does not toll the statute of limitations in Pennsylvania. However, since the Pennsylvania Supreme Court has ruled clearly on this point, *Walker v. Mummert,* 394 Pa. 146, 146 A.2d 289 (1958), we are bound by that determination. Second, plaintiff contends

that his injury lasted until he was released from Farview on August 8, 1975; in other words, not only was he denied a hearing in the first instance, but in addition, there was a continuing obligation to provide him with a hearing during his confinement at Farview. Because of the way we decide the statute of limitations issue, we do not reach the merits of this contention.

area is . . . unlikely to frustrate in any important way the achievement of any significant goal of labor policy." *Id.* at 702, 86 S.Ct. at 1111. In rejecting the request to toll the borrowed state statute of limitations during the pendency of a prior similar state action, the Court distinguished *Burnett* on the ground that no policy of the Labor Management Relations Act was jeopardized. The Court concluded:

> "Moreover, unlike the plaintiff in *Burnett* who could no longer bring a timely federal action after the state court dismissed his complaint, the union here had a full three years to bring this lawsuit in federal court after the dismissal of the state court action. Under these circumstances, we have no difficulty in concluding that this cause of action expired in June, 1963, six years after it arose." *Id.* at 708, 86 S.Ct. at 1115.

We glean from *Burnett, Hoosier Cardinal Corp., Holmberg* and *Moviecolor Limited* that federal courts should utilize equitable principles and fashion their own tolling provisions in those infrequent situations where state statutes of limitations effectively deny rights or impede policies created by federal law.

The Second Circuit has applied this principle to a civil rights case. In *Kaiser v. Cahn,* 510 F.2d 282 (2d Cir. 1974), the court held that a federal court is not necessarily bound by a state determination of when its statute of limitations is tolled. The cause of action in *Kaiser* arose in New York where persons imprisoned at the time their cause of action accrues are entitled to bring suit up to three years after their release. The New York courts construed the tolling statute as prohibiting the tacking of disabilities, *i. e.,* once a prisoner is released, a later incarceration will not retoll the statute. The Second Circuit declared its test to be "whether a statute of limitations unduly impairs the federal interest sought to be enforced." *Id.* at 287. The court then decided to follow the New York interpretation of its tolling provision in the case at hand because the plaintiff had almost three years of freedom within which to file and pursue

his civil rights claims. *Id.* at 287. However, the court stated that the situation would be different if a prisoner, for example, had been out on bail for two days and then had the bail revoked. *Id.* at 286.

A similar analysis was utilized in *Conard v. Stitzel,* 225 F.Supp. 244 (E.D.Pa.1963), where the court considered whether it "must modify or reject entirely the state statute of limitations in order to protect the federal cause of action or safeguard a federal policy inherent in it." *Id.* at 248. While holding that imprisonment did not toll the statute of limitations in the specific civil rights action under consideration, Judge Freedman stated:

> "Finally, as in all judicial action, this decision necessarily is confined to the facts of this case. Circumstances may be envisaged in which application of state statutes of limitations would amount to a complete denial of a right created by Congress. But here the facts forbid any inference that plaintiff's incarceration prevented his assertion of his right of action." *Id.* at 249.

*Getz v. Bruch,* 400 F.Supp. 1033 (E.D.Pa. 1975), also involved the question of tolling the statute of limitations in a civil rights case for the period of the plaintiff's incarceration. Judge Luongo recognized that:

> "[T]he federal courts may . . . fashion their own limitations periods whenever a state statute of limitations threatens a federal program's need for uniformity. *United Auto Workers v. Hoosier-Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); *Atkins v. Schmutz Mfg. Co.,* 435 F.2d 527 (4th Cir. 1970), or discriminates against or overly burdens a federal cause of action. *Van Horn v. Lukhard,* 392 F.Supp. 384, 391 (E.D.Va.1975)." *Id.* at 1036.

However, he found in the context of his case that "no special circumstances" existed which justified the creation of a federal tolling provision. *Id.* at 1036.

It would seem evident that federal courts can fashion their own tolling provisions under appropriate circumstances in civil rights cases were it not for language in *Ammlung*

*v. City of Chester,* 494 F.2d 811 (3d Cir. 1974):

"Furthermore, given the absence of a federal limitation period in the Civil Rights Act, the court has no basis for fashioning federal tolling principles, and due regard for our system of federalism requires that state concepts of tolling be applied to state statutes of limitations.

\* \* \* \* \* \*

"We hold that state tolling principles govern the tolling of the applicable state statutes of limitations in federal civil rights actions arising under 42 U.S.C.A. § 1983." *Id.* at 816.

We believe that *Ammlung* was intended to be read narrowly and confined to its own facts. The case concerned the issue of whether prior state litigation involving a similar cause of action tolls the statute of limitations in a civil rights suit. The court determined that tolling was improper, holding that the case was controlled by *Int'l Union v. Hoosier Cardinal Corp., supra.* While *Hoosier Cardinal Corp.* certainly supports the court's holding, the case is at variance with a broad interpretation of the language in *Ammlung.*

Moreover, *Ammlung* itself contains a suggestion that the bar against tolling a statute of limitations in a civil rights action is not absolute. The court in *Ammlung* found that the prior state suit was not a similar cause of action to the suit before it and then concluded that: "Therefore, appellant's state litigation cannot justify her delay in bringing this federal civil rights action." *Id.* at 816. If *Ammlung* really meant that there could never be a federally shaped tolling concept, any possible justification would be immaterial.

We do not believe that the Third Circuit intended to change the rule that a federal court can and should fashion a tolling provision for a state statute of limitations in those rare cases where it is appropriate. Rather, we interpret *Ammlung* to be in keeping with the established rule that courts should generally apply state tolling provisions to state statutes of limitations in civil rights suits. *Ammlung* was concerned with the usual situation in which the permissible time for filing suit is clear, it is possible to file suit during that period and no federal cause of action is threatened. In such cases, federalism considerations may become paramount. But where a federal cause of action may effectively be defeated, a federal court may have the duty to fashion a tolling provision.

The question now becomes whether Eubanks' mental incompetency is the type of situation warranting our tolling the state statute of limitations.[6] Equitable principles of reasonableness dictate our determination of whether the suit is barred.[7] We conclude that it is unreasonable to expect involuntarily committed mental patients to assert their rights while they are institu-

---

**6.** The fact that the Third Circuit has held that insanity does not toll claims under the Federal Tort Claims Act, *Accardi v. United States,* 435 F.2d 1239, 1241 n. 2 (3d Cir. 1970), is not controlling in this case. Central to the holding in *Accardi* are two factors. First, the Federal Tort Claims Act contains an explicit statute of limitations which evinces congressional intent as to the scope of government liability. Second, the Federal Tort Claims Act waives sovereign immunity; and to fashion a tolling provision would expand the waiver without explicit congressional approval. By contrast, in our case, a strict adherence to the state statute of limitations would defeat congressional intent by denying plaintiffs redress of their constitutional rights under the Civil Rights Acts. Obviously, sovereign immunity considerations are not present here.

**7.** Close analysis reveals that courts look to such equitable principles in determining whether the suit is barred. *E. g., Int'l Union v. Hoosier Cardinal Corp.,* 383 U.S. 696, 708, 86 S.Ct. 1107, 1115, 16 L.Ed.2d 192 (1966) ("the union here had a full three years to bring this lawsuit"); *Kaiser v. Cahn,* 510 F.2d 282, 286–87 (2d Cir. 1974) (holding that tolling was inappropriate where the plaintiff had almost three years in which to file, but tolling would be proper if, for example, plaintiff had only ten days). In other opinions there is a suggestion of fairness concepts which is very subtle. *E. g., Ammlung v. City of Chester,* 494 F.2d 811, 816 (3d Cir. 1974) ("appellant's state litigation cannot justify her delay"); *Jones v. Bombeck,* 375 F.2d 737, 739 (3d Cir. 1967) ("We can discern no reason why the statute should be tolled").

tionalized. It would be unconscionable to allow state employees who violate the civil rights of the involuntarily committed mental patients under their care to escape a federally created liability because the patients they victimize remain incompetent during the entire running of the period of limitations. Congress could not have intended that abused patients be denied redress under the federal civil rights laws. Concerns with protecting defendants from old charges become less compelling in such situations both because the patients could not act in time and because defendants should not be permitted to take advantage of the running of the statute of limitations.

The Third Circuit has declined to create a federal tolling provision in a civil rights action where the plaintiff is incarcerated. *Jones v. Bombeck*, 375 F.2d 737 (3d Cir. 1967). But prisoners are obviously in a very different position from persons who are involuntarily committed due to mental incompetency. Prisoners have the mental capacity to bring suit and they have "jail house lawyers," prison law libraries or other legal assistance to aid them in the preparation of their civil suits. On the other hand, mentally incompetent persons who are institutionalized are not able to help themselves and do not have the benefit of peer assistance or institutional facilities.

Our case is complicated by the fact that Eubanks was mentally incompetent only for the first nineteen months of the twenty-four months limitations period. Plaintiff then filed this suit less than a year from the time that he became mentally competent.

It is appropriate to fashion a federal tolling provision only where equitable considerations demand that we do so. Since a tolling provision would not be unfair to defendants in this case, the question is whether the borrowed state statute of limitations with no tolling provision effectively denies Eubanks a right created by federal law, *i. e.*, the right to redress a violation of his constitutional rights under the Civil Rights Acts. Eubanks has been effectively denied a federal right if it is unreasonable (unfair) to expect a person with his disability to bring suit within the period provided by state law.

■■■■ We have found as a matter of law that it is unreasonable to expect Eubanks to have brought this suit while he was institutionalized. Therefore, the remaining question is whether the five months between Eubanks becoming competent and the running of the statute of limitations is an unreasonable time in which to expect Eubanks to bring suit. It is impossible to draw bright lines, to determine as a matter of law that one month or six months or one year is an unreasonable period of time. Reasonableness depends of necessity on the facts of the given situation and the only way we know to determine facts is through a hearing. We will therefore hold a hearing *in limine* to determine whether equitable principles dictate a federal tolling provision under the specific facts of this case. Of course, if we deem tolling for Eubanks' period of incompetency appropriate, Eubanks' suit was brought within the two year statute of limitations.

## III.  ELEVENTH AMENDMENT

■■■ Defendants contend that we lack subject matter jurisdiction since the eleventh amendment bars any recovery of damages when the state is the real party in interest. However, since defendants are sued only in their personal capacities, this argument is clearly without merit. *See, e. g., Fialkowski v. Shapp*, 405 F.Supp. 946, 954 (E.D.Pa.1975).

## IV.  IMMUNITY

Defendants claim they are immune from damages because: (1) the complaint fails to allege that defendants acted in bad faith or unreasonably; and (2) as a matter of law, due to the state of the case law, defendants could not have known that their actions violated plaintiff's rights.

■■■■ Immunity is an affirmative defense, *Skehan v. Board of Trustees of Bloomsburg State College*, 538 F.2d 53, 61 (3d Cir. 1976), *cert. denied*, 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1977), and there-

fore no allegation in the complaint is necessary. Even if an allegation were necessary, paragraph 39 of the complaint which states that "defendants knew or should have known that their actions violated the plaintiff's rights" is sufficient. *O'Connor v. Donaldson,* 422 U.S. 563, 577, 95 S.Ct. 2486, 2494, 45 L.Ed.2d 396 (1975). *See also Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Fialkowski v. Shapp, supra* at 955–56; *Skehan v. Board of Trustees of Bloomsburg State College, supra* at 59–61.

██ Defendants are not immune if they knew or reasonably should have known that the action they took within their sphere of official responsibility would violate Eubanks' constitutional rights *or* if they took action with the malicious intention to cause a deprivation of constitutional rights or other injury to Eubanks. *O'Connor v. Donaldson, supra,* 422 U.S. at 577, 95 S.Ct. 2486. Therefore, even if the state of the case law was such that no constitutional right had been "clearly established," *Wood v. Strickland, supra,* 420 U.S. at 322, 95 S.Ct. 992, we cannot determine as a matter of law that defendants qualify for a good faith defense. We will defer our examination of this matter until the record is more fully developed at trial. *Imbler v. Pachtman,* 424 U.S. 409, 419 n. 13, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Skehan v. Board of Trustees of Bloomsburg State College, supra* at 59–61; *Fidtler v. Rundle,* 497 F.2d 794, 801 (3d Cir. 1974).

### V. DEFENDANTS OWENS AND RADDIN

██ Defendants Owens and Raddin move to dismiss alleging that the complaint fails to notify them of what actions they took in violation of plaintiff's rights. Paragraph 11 of the complaint states:

"Defendant, H. M. Owens, M.D. is a staff psychiatrist employed at Farview State Hospital. In that capacity he was responsible for the plaintiff's care and treatment while at Farview State Hospital."

Paragraph 12 of the complaint states:

"Defendant J. Raddin, M.D. was a physician at Farview State Hospital, Waymart, Pennsylvania on and after January 18, 1974. In that capacity, he was responsible for the plaintiff's care and treatment while at Farview State Hospital."

Plaintiff alleged that he was denied his right to treatment at Farview. If defendant Owens and Raddin were responsible for that lack of treatment, they may be liable to plaintiff. The allegations are sufficient.

### VI. MOOTNESS OF CLAIM FOR DECLARATORY RELIEF

██ On September 7, 1976 the Mental Health Procedures Act, Act of July 9, 1976, P.L. 817, No. 143, 50 P.S. § 7101 *et seq.,* took effect and repealed the 1966 Act insofar as it applied to the mentally ill. Under section 306, 50 P.S. § 7306, transfers between state facilities which result in greater restraints must be found necessary and appropriate.

This law was not in effect when plaintiff was transferred to Farview. As a result of the new law, the transfer procedure which plaintiff seeks to have declared invalid is no longer in effect. Because there is no longer an actual controversy between plaintiff and defendants, the claim for declaratory relief is moot and must be dismissed. Of course, the claim for damages still presents a live case and controversy.

### VII. PENDENT JURISDICTION

██ In light of our rejection of defendants' motion to dismiss the constitutional claims, we will continue to retain pendent jurisdiction over the state law claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Defendants' motion to dismiss the claim for declaratory relief will be granted. We will hold a hearing to determine if the transfer cause of action is barred by the statute of limitations. Defendants' remaining challenges will be denied.