**Concepcion CRUZ on behalf of her son Pedro Antonio Vega Cruz, Plaintiff,**

v.

**Jenaro COLLAZO, Secretary of the Department of Social Services, Esperanza Acosta De Brenes, Assistant Secretary of the Department of Social Services, Juan F. Arroyo, Director of the Guaynabo Juvenile Institution, Individually and in their official capacities, their agents, employees and/or successors in office, Defendants.**

Civ. No. 77–830.

United States District Court,
D. Puerto Rico.

May 22, 1978.

Inés Stoll Roche, Puerto Rico Legal Services, Hato Rey, P. R., for plaintiff.

Marta Quiñones de Torres, Asst. Sol. Gen., Dept. of Justice, San Juan, P. R., for defendants.

## OPINION AND ORDER

TOLEDO, District Judge.

The complaint in this case was filed on June 1, 1977, and the jurisdiction of this Court was invoked under Title 28, United States Code, Sections 1343(3), 1651, 2201 and 2202. It is alleged that plaintiff Pedro A. Vega Cruz is a juvenile presently within the custody of the Secretary of the Department of Social Services of the Commonwealth of Puerto Rico and residing at the Guaynabo State Home for Boys. It is averred that plaintiff is not receiving adequate rehabilitative treatment and that, thus defendants are depriving plaintiff, and the class he seeks to represent, of his rights secured by the Due Process Clause as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. Additionally, plaintiff claims violations to his rights as guaranteed by the Fourth, Eighth, Ninth and Thirteenth Amendments.

While discovery and the filing of legal memoranda in this case was underway defendants filed, on August 16, 1977, a motion to dismiss alleging, among other grounds, that plaintiff Pedro A. Vega Cruz, had escaped from the Guaynabo treatment center and thus could not represent the juveniles residing at the Guaynabo Home for Boys. Thereafter, plaintiff informed the Court that Pedro Vega Cruz had returned to the Guaynabo Juvenile Institution from where he had previously escaped.[1] On October 26, 1977, the Court was again informed by defendants that plaintiff had once more abandoned the treatment center. On October 31, 1977, that same party informed the Court that plaintiff returned to the institution in the evening of October 30.

On November 10, 1977, defendants informed the Court that plaintiff had been transferred to the Industrial School for Boys in Mayaguez. Thereafter, on November 11, plaintiff filed a motion for a Temporary Restraining Order alleging therein that the Mayaguez Industrial School was a maximum security juvenile institution which housed hardened delinquents and that he had been transferred thereto without a hearing all of this in deprivation of his constitutional rights to due process and equal protection. On November 14, 1977, we issued a Temporary Restraining Order ordering defendants to return plaintiff to the Guaynabo Juvenile Institution. On November 30, 1977, we issued an order, ordering the parties to submit memoranda on the issue of whether the requirements established by the United States Supreme Court in *In Re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), apply to plaintiff's transfer from one juvenile institution to another juvenile institution of maximum security, without a hearing. In that order it was further provided that the Temporary Restraining Order issued in the case was extended, in the nature of a preliminary injunction, until the final disposition of said matter. Said memoranda having been duly filed, the matter now stands submitted for our consideration.

## ANALYSIS

It is plaintiff's contention that the transfer of a juvenile from a nonsecure juvenile facility to which he has been committed, to a maximum security institution for hardened juvenile delinquents pursuant to an administrative determination, without a judicial hearing, is violative of the due process and equal protection provisions contained in the Federal Constitution.

Defendants' contention is to the effect that the transfer here in question is not violative of plaintiff's due process and equal protection rights. Defendants are in effect stating that plaintiff herein has no liberty interest at stake. This is so, they contend, because the law[2] ". . . is very clear in that minors who are placed under the custody of the Secretary of Social Services are not committed to a particular institution by the Juvenile Court but to the custody of the

---

1. Plaintiff's "Motion in Answer to Defendant's Motion for Reconsideration . . ." filed on October 18, 1977.

2. Title 34, L.P.R.A., Section 2010(4).

Secretary to be placed in an institution adequate for the minor's rehabilitation, the institution to be determined by the Secretary." (Defendants' Memorandum of Law filed December 8, 1977). They emphasize that plaintiff was transferred from a juvenile institution administered by the Secretary to another juvenile institution administered by the Secretary and that there was no change in his classification or designation as a delinquent. The discretion of the Secretary, under 34 L.P.R.A. Section 2010(4) is strongly relied upon by defendants and the argument is made to the effect that in plaintiff's case the Secretary could have originally committed plaintiff to the Mayaguez Industrial School without any ensuing due process claim. It is also claimed that plaintiff was accorded a full due process treatment according to the mandates of *In Re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) at the adjudicative stage when he was adjudged a juvenile delinquent by the Puerto Rico Juvenile Court.

We find that the precise issue here in question, the transfer from one juvenile institution to another, albeit a maximum security one, is of first impression. The cases cited by the parties in support of their respective contentions involve either the transfer of juveniles to adult penal institutions [3] or of mentally ill patients from minimum to maximum security confinements or for indeterminate periods.[4] Both lines of cases present the risk of losing perspective of the proper analysis to be made in view of the constitutional right involved. Thus, in the present case a proper definition of the right invoked is essential to trigger the correct analysis.

We begin by stating that once the issue has been clearly defined as above, *In Re Gault* has no direct application herein. In that case the Supreme Court held that juvenile *adjudicative* proceedings must be conducted in compliance with due process standards. By its own terms, the decision does not cover the post adjudicative stage in juvenile proceedings.[5]

In this type of case we must first determine whether a life, liberty, or property interest within the meaning of the Due Process Clause is at stake. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Walker v. Hughes*, 558 F.2d 1247 (1977).

In *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) the United States Supreme Court held that an individual's grievous loss as a result of state action is not by itself enough to trigger the application of the Due Process Clause:

"We reject . . . the notion that any grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause. In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), a university professor was deprived of his job, a loss which was surely a matter of great substance, but because the professor had no property interest in his position, due process procedures were not required in connection with his dismissal. We there held that the determining factor is the nature of the interest involved rather than its weight." (Emphasis supplied.)

The liberty analysis to be made was further described by the United States Court of Appeals for the Sixth Circuit in *Walker v. Hughes*, supra, at p. 1251:

"However, under *Meachum*, the emphasis is on whether there is entitlement to be 'free from bodily restraint,' *Morrissey v. Brewer*, supra, 408 U.S. at 484, 92 S.Ct. 2593, or 'to enjoy those privileges recognized as essential to the orderly pursuit of happiness.' *Board of Regents v. Roth*, supra, 408 U.S. at 572, 92 S.Ct. at 2706; *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). In

**3.** E.g. *Inmates of Boys Training School v. Affleck*, 346 F.Supp. 1354 (1972); *Shone v. State of Maine*, 406 F.2d 844 (1 C.A., 1969).

**4.** E.g. *Eubanks v. Clarke*, 434 F.Supp. 1022 (1977); *Baxstrom v. Herold*, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620.

**5.** 387 U.S. at p. 13, 87 S.Ct. 1428.

effect, *Meachum* equated the threshold test for the finding of a liberty interest with that for determining whether a property interest exists. *Board of Regents v. Roth*, supra, 408 U.S. at 577, 92 S.Ct. at 2709, laid down this criterion in examining the nature of an alleged property interest:

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must . . . have a legitimate claim of entitlement to it." (Emphasis supplied.)

.    .    .    .    .

"For at least two reasons the requirement of an entitlement for the existence of a due process liberty interest, instead of a finding of grievous loss, is the prescribed approach. First, a standard of grievous loss would measure the weight of the individual interest rather than determining its nature, contrary to the intention of *Roth*, supra, 408 U.S. at 570–71, 92 S.Ct. 2701, and *Morrissey*, supra, 408 U.S. at 481, 92 S.Ct. 2593. Second, the requirement of an entitlement provides an appropriate basis for compromise between the need for the protection of individual interests and the need for government action unhampered by procedural burdens. A standard of grievous loss would interfere more directly with government responsibilities. The Supreme Court in *Meachum v. Fano*, supra, 427 U.S. at 225, 96 S.Ct. at 2538, recognized that fact in the context of prison management.

"[T]o hold as we are urged to do that any substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts."

Thus for the Due Process Clause to apply in the present case plaintiff must show some kind of liberty entitlement not to be transferred to a maximum security juvenile institution. It should be borne in mind that such transfer entails no change of plaintiff's classification as a juvenile delinquent and that the transfer is one within the system of *juveniles* institutions in Puerto Rico.

In *Meachum v. Fano*, supra, the Supreme Court specifically rejected the theory that "any change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause . . ." *Id.* 427 U.S. at 224, 96 S.Ct. at 2538. In *In Re Gault*, supra, the Supreme Court specified the requirements of the Due Process Clause to be accorded in the adjudicative stage of juveniles. Here it is not contested that at said stage, plaintiff was accorded a fully constitutional adjudication. Given a valid adjudication of juvenile delinquency, plaintiff has been constitutionally deprived of his liberty to the extent that the State may confine him and to subject him to its juvenile institution system so long as the conditions of confinement do not otherwise violate the Constitution.

In *Meachum*, the Court implied that the Constitution by its own force does not require that a person be confined in any particular prison:

". . . Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose. That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules." [Id. 96 S.Ct. at 2538].

We must, therefore, inquire whether under the law of Puerto Rico a liberty interest has been created so as to accord plaintiff a cause of action. In his supplemental brief filed on November 22, 1977, plaintiff states as follows:

". . . From an analysis of the Statute, it can be concluded that while the Statute governing judicial proceed-

ings concerning juveniles in the Commonwealth of Puerto Rico does not expressly establish the right to a judicial hearing prior to a transfer from one institution to another, it does not deny that right either . . . ."

■ Much as we would like to rule otherwise, under *Meachum v. Fano*, the statute's omission in creating a liberty expectancy to remain in one given juvenile institution compels us to decide that there is no such liberty interest at stake. There is no creation by omission.

Under the statute here at hand [6] the minors placed by the Juvenile Courts under the custody of the Puerto Rico Secretary of Social Services are not committed to a particular institution by the Juvenile Court but to the custody of the Secretary to be placed, within his discretion, in an institution adequate for the minor's rehabilitation.

In *Meachum v. Fano,* supra, the Supreme Court held that the discretion granted to Massachusetts prison officials precluded finding under Massachusetts law a created liberty interest to being not transferred to another prison. Such is precisely the case here. In *Meachum* the Court said:

"... Massachusetts prison officials have the discretion to transfer prisoners for any number of reasons. Their discretion is not limited to instances of serious misconduct. As we understand it no legal interest or right of these respondents under Massachusetts law would have been violated by their transfer whether or not their misconduct had been proved in accordance with procedures that might be required by the Due Process Clause in other circumstances. Whatever expectation the prisoner may have in remaining in a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger

procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all." 427 U.S. at 228, 96 S.Ct. at 2540.

See also: *Montayne v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), wherein it was held that New York law did *not* create a liberty interest precluding transfer to another prison.

Although we do not think that the matters raised by plaintiff herein are "ephemeral" or "insubstantial" we are compelled to follow the doctrine laid in *Meachum* and thus DENY plaintiff's request for a preliminary and permanent injunction. The constitutional law of the day has seen fit to regard that plaintiff's claim is not encompassed within the liberty concept of the Due Process Clause of the Fourteenth Amendment.

Wherefore, in view of all of the above, plaintiff's request for a preliminary and permanent injunction is hereby DENIED.

IT IS SO ORDERED.

**6.** This section reads:

"If the judge shall find that the condition or behavior of the child brings him under the provisions of Section 2002 of this title, he may enter an order:

. . . . . .

4. Placing the child under the custody of the Secretary of Health for commitment to an institution suitable for the treatment of children, or

for his placement in a foster home; or he may provide the manner of the treatment, without the need of committing the minor; provided, that the Secretary of Health may not terminate the period of custody or remove the minor from the jurisdiction of the court, without the previous express authorization of the latter; . . . ."