

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-7-2000

# Lake v. Arnold

Precedential or Non-Precedential:

Docket 98-3558

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Lake v. Arnold" (2000). *2000 Decisions.* Paper 233.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/233

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 7, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-3558

ELIZABETH J. ARNOLD LAKE; JUSTIN WILSON LAKE,
husband and wife,
      Appellants

v.

FREDERICK S. ARNOLD; AUDREY L. ARNOLD, husband
and wife; DANIEL M. FRIDAY M.D.; TYRONE HOSPITAL;
RALPH W. CRAWFORD M.D.

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 95-cv-00245)
District Judge: Honorable Gary L. Lancaster

Argued: September 7, 1999

Before: SLOVITER and ROTH, Circuit Judges
POGUE1, Judge

(Filed: November 7, 2000)

_____

1. Honorable Donald C. Pogue, Judge for the United States Court of
International Trade, sitting by designation.

Kristin M. Banasick, Esquire
 (Argued)
321 South Richard Street
Bedford, PA 15522

 Attorney for Appellant

Stephen D. Wicks, Esquire
Law Office of Stephen D. Wicks
109 Lakemont Park Boulevard
Altoona, Pennsylvania 16602

 Attorney for Appellees
 Frederick S. Arnold and
 Audrey L. Arnold

David R. Bahl, Esquire (Argued)
McCormick, Reeder, Nicholas,
Bahl, Knecht & Person
835 West Fourth Street
Williamsport, Pennsylvania 17701

 Attorney for Appellees
 Daniel M. Friday, M.D. and
 Ralph W. Crawford, M.D.

John V. DeMarco, Esquire (Ar gued)
Doyle & McCrory
One Chatham Center, St. 950
Pittsburgh, Pennsylvania 15219

 Attorney for Appellee
 Tyrone Hospital

OPINION OF THE COURT

ROTH, Circuit Judge:

Elizabeth Lake is mentally retarded. In 1977, at 16 years of age, she was permanently sterilized. She and her husband, Justin, ask in this appeal whether they can still challenge the sterilization under state and federal law by bringing claims against her father and step-mother who authorized the operation, against the doctors who performed it, and against the hospital where it was

2

performed. Although we agree with the District Court's decision that the Lakes' state claims are time-barred by Pennsylvania's two-year statute of limitations for personal injury suits, we do not agree with its conclusion that the federal civil rights claims are also untimely. Given our earlier decision that the mentally retar ded are a protected class for the purposes of 42 U.S.C. S 1985(3), we must determine whether federal tolling doctrine will permit Elizabeth Lake to escape the bar of the statute of limitations on her federal claims. For the r easons we explain below, we will remand this case to the District Court to make this determination in further pr oceedings consistent with this opinion.

In addition to affirming the dismissal of Elizabeth's state personal injury claims, we also affirm the District Court's dismissal of Justin's state law loss of consortium claim. Finally, we affirm the District Court's denial of the Lakes' request to amend their complaint.

I. Facts

Plaintiff-appellant Elizabeth Arnold Lake was born in Ventura, California, in 1961 to Helga Hadvig and Frederick Arnold. Until she was twelve, Elizabeth lived with her mother and her mother's boyfriend in Minnesota. Her father then invited her to move to Saxton, Pennsylvania, to live with him and his wife, Audrey Arnold. Elizabeth accepted the offer. Elizabeth attended special education classes through the eighth grade, which she completed at age 16 when she left school.

That same year, in June 1977, Elizabeth underwent a tubal ligation at Tyrone Hospital, in Tyr one, Pennsylvania. The Lakes allege that the hospital had a policy allowing the sterilization of the mentally retarded. They contend that on the advice of the family physician, Dr. Chester Isenberg, Elizabeth was taken to the hospital by her father and step-mother. Despite the fact that Elizabeth was mentally retarded and allegedly illiterate, hospital employees gave her a consent form to sign, authorizing the pr ocedure. Elizabeth signed the form. Dr. Daniel Friday, supervised by Dr. Ralph Crawford, perfor med the surgery. At no point did

3

any of the defendants seek to have Elizabeth's inter ests, as opposed to her parents' interests, r eviewed by a court or other appropriate forum.

The Lakes claim that after the surgery Elizabeth's father and step-mother removed her from school and had her do housekeeping duties in their home. She remained a member of the Arnold household until she was in her twenties, when she moved into a group home.

In May 1993, Justin and Elizabeth decided to get married. In December 1993, at Justin's behest, Elizabeth visited a gynecologist to discuss the couple's desir e to start a family. During this visit, the doctor told Elizabeth that she could not bear children because of her 1977 tubal ligation. Allegedly, this visit to the doctor was the first time that Elizabeth learned that her 1977 sur gery had left her permanently sterilized. Justin and Elizabeth were married in 1994.

II. Procedural History

The Lakes first filed this civil action on May 31, 1995, in Pennsylvania state court against the following defendants: (1) Elizabeth's father, Frederick S. Ar nold, (2) her stepmother, Audrey L. Arnold, (3) Dr. Daniel M. Friday, (4) Dr. Ralph W. Crawford, and (5) Tyrone Hospital. The action alleged nine counts, including state claims for civil battery, negligence, lack of informed consent, and outrageous conduct, as well as two federal counts, one under 42 U.S.C. S 1983 for violation under color of state law of Elizabeth's constitutional right to procreate and the other under 42 U.S.C. S 1985(3) for conspiracy to deprive Elizabeth of the right to procreate because she was mentally retarded. Justin also filed a claim of loss of consortium based on Elizabeth's infertility.

Tyrone Hospital successfully petitioned to r emove the case to federal court. Following removal, the plaintiffs filed an amended complaint. All the defendants then filed motions to dismiss pursuant to Fed. R. Civ. Pr o. 12(b)(6) for failure to state a claim. Adopting the Magistrate Judge's Report and Recommendation, the District Court in June 1996 dismissed the two federal civil rights claims,

4

remanded the remaining state claims to the state court, and relinquished jurisdiction.

Elizabeth and Justin appealed this decision. On May 2, 1997, we reversed the District Court's decision to dismiss the federal civil rights claims, concluding that (1) the Lakes had alleged sufficient facts to sustain a claim of state action under S 19832 and (2) the mentally disabled were a protected class for the purposes of a S 1985(3) conspiracy claim. See Lake v. Arnold, 112 F .3d 682 (3d Cir. 1997) (Lake I). We remanded the case to the District Court for further proceedings.

On remand, in response to the amended complaint that reasserted the Lakes' state and federal claims, the defendants again moved to dismiss, this time contending that the Lakes' claims were time-barred by the relevant Pennsylvania statute of limitations. The Magistrate Judge once again ruled for the defendants, recommending in his Report and Recommendation that Elizabeth's claims be dismissed as time-barred and that Justin's loss of consortium claim be dismissed on substantive gr ounds. See Lake v. Arnold, No. 95-245J (W.D. Pa. Mar. 10, 1998) (Lake II). Both parties filed timely objections. The Lakes also requested leave to amend their complaint to allege new, but unspecified, facts. The District Court, however , adopted the Magistrate Judge's recommendations on the statute of limitations and on Justin's loss of consortium claim and denied the Lakes' request for leave to amend their complaint. See Lake v. Arnold, No. 95-245J (W.D. Pa. Oct. 30, 1998) (Lake III).3 It is this order that the Lakes now appeal.

The District Court had subject matter jurisdiction over the Lakes' federal civil rights claims under 28 U.S.C. S 1331 and supplemental jurisdiction over their related state

_____

2. We found that the Lakes' allegations that Tyrone Hospital was a state actor were adequate to withstand a motion to dismiss.

3. The Magistrate Judge also dismissed Dr . Crawford's defense that he was not Dr. Friday's supervisor and Audr ey Arnold's defense that she owed Elizabeth no legal duty of protection. See Lake III, slip op. at 3-4 nn. 3-4. Neither party, however, appeals these decisions and we do not address them.

5

claims under 28 U.S.C. S 1367. We have appellate jurisdiction under 28 U.S.C. S 1291.

III. Statute of Limitations

A. Standard of Review

We exercise plenary review of the District Court's dismissal of the Lakes' claims on statute of limitations grounds under Fed. R. Civ. P. 12(b)(6). See Algrant v. Evergreen Valley Nurseries Ltd. Partnership, 126 F.3d 178, 181 (3d Cir. 1997). This plenary review extends to the District Court's choice and interpretation of applicable tolling principles and its conclusion that the facts prevented a tolling of the statute of limitations. See Sheet Metal Workers Local 19 v. 2300 Group, Inc., 949 F.2d 1274, 1278 (3d Cir. 1991) (citing Venau's v. Vic's Meat Market, Inc., 896 F.2d 43, 45 (3d Cir. 1990)). We assume, for the purposes of our review, that all the facts the Lakes allege in their complaint are true and we give them, as the nonmoving parties below, the benefit of all r easonable inferences one can draw from these facts. We review the District Court's determinations of state law de novo. See Salve Regina College v. Russell, 499 U.S. 225, 231 (1991); Nelson v. County of Allegheny, 60 F.3d 1010, 1012 (3d Cir. 1995).

B. Applicable Statute of Limitations

The District Court adopted the Magistrate Judge's recommendation that Pennsylvania's two-year statute of limitations for personal injury lawsuits gover ned both the Lakes' state and federal claims. See Lake III . While we agree that Pennsylvania law bars Elizabeth's state law claims, we do not agree with the District Court's deter mination that the federal claims are also time-barred. Although the Pennsylvania statute of limitations is applied to the federal claims, federal tolling doctrine may be applicable to determine whether Elizabeth's federal claims are timely. See Oshiver v. Levin, Fishbein, Sedran & Berman , 38 F.3d 1380, 1387 (3d Cir. 1994) (applying federal tolling to limitations period in employment discrimination case); Heck v.

6

Humphrey, 997 F.2d 355, 357-58 (7th Cir. 1993). As we discuss below, application of the federal tolling doctrine leads us to conclude that the federal claims may not be barred.

1. State Personal Injury Claims

Elizabeth's state claims run the gamut of personal injury claims common to medical malpractice suits, alleging (1) civil battery, (2) negligence by Elizabeth's par ents, the doctors, and the hospital, (3) lack of infor med consent, and (4) outrageous conduct by her parents, the doctors and the hospital. The District Court, adopting the Magistrate Judge's recommendation, dismissed them all as time barred by Pennsylvania's two-year statute of limitations for personal injury suits. See 42 Pa. C.S. S 5524 (West 1999).4

The statute of limitations begins to run "fr om the time the cause of action accrued," which we have pr eviously interpreted to mean when "the first significant event necessary to make the claim suable" occurs. Ross v. Johns-Mansville Corp., 766 F.2d 823, 826 (3d Cir. 1985); see generally 42 Pa. C.S. S 5502(a) (W est 1999). Thus, Elizabeth's claim under state law accrued in 1977, when she was sterilized. Although theoretically Elizabeth could have brought her claim in 1977, she contends that as a practical matter she could not have done so because she was 16 years old and mentally retarded. If a claim were to have been brought on her behalf at that time, it would have been brought by her guardians, her father and step-mother, see, e.g., Walker v. Mummert , 146 A.2d 289, 291 (Pa. 1958), but it was the guardians who in fact arranged for the sterilization to be performed.

_____

4. The statutory language reads in pertinent part:

> The following actions and proceedings must be commenced within two years: . . .
>
> (2) An action to recover damages for injuries to the person or for the death of an individual caused by the wr ongful act or neglect or unlawful violence or negligence of another.
>
> . . .

42 Pa. C.S. 5524 (West 1999).

Under the two-year limitations period, Elizabeth's cause of action expired in 1979, two years after her operation. At the time of Elizabeth's sterilization, the statute of limitations did not toll for either minority or incompetence. See Walter v. Ditzler, 227 A.2d 833 (Pa. 1967). Although the statute was later amended in 1984 to toll for minors until they reached age 18, that amendment was not r etroactive. See Maycock v. Gravely Corp., 508 A.2d 330 (Pa. 1986). Even if it were retroactive, however , Elizabeth's claim would have expired in 1986, making her 1993 claims still untimely. Moreover, the statute of limitations was never amended to include incompetency as grounds for tolling. See 42 Pa. C.S. S 5533 (West 1999). 5 Thus, Elizabeth's mental retardation is not a basis for pr eserving her claim under Pennsylvania's tolling statute.6

Pennsylvania common law does, however, allow some "breathing room," as the Magistrate Judge's report recognized, in that it recognizes the discovery rule, which tolls the statute of limitations until a plaintif f actually discovers the harm caused by an earlier inflicted but latent

_____

5. The statutory language reads:

  (a) General rule.--Except as otherwise provided by statute, insanity
  or imprisonment does not extend the time limited by this
  subchapter for the commencement of a matter.

  (b) Infancy.--If an individual entitled to bring a civil action is an
  unemancipated minor at the time the cause of action accrues, the
  period of minority shall not be deemed a portion of the time period
  within which the action must be commenced. Such person shall
  have the same time for commencing an action after attaining
  majority as is allowed to others by the provisions of this
subchapter.
  As used in this subsection the term "minor" shall mean any
  individual who has not yet attained the age of 18.

42 Pa. C.S. S 5533 (West 1999).

6. The Pennsylvania Supreme Court justified its strict construction of the personal injury statute of limitations in regar d to the mentally incompetent in its opinion in Walker v. Mummert, 146 A.2d 289, 291 (Pa. 1958), in which the court emphasized that the practice of appointing a guardian, who can bring suit on behalf of the incompetent, would mitigate against any harsh consequences from a strict construction of the statute of limitations against the incompetent.

8

injury. See Ayers v. Morgan, 154 A.2d 788 (Pa. 1959) (permitting statute of limitations to toll for plaintiff's injuries that later developed from doctor leaving a sponge in his abdomen during surgery).

Nevertheless, the discovery rule does not affect Elizabeth's state claims because the circumstances under which it can be invoked depend on the nature of the injury rather than any specific characteristics unique to the plaintiff that might otherwise prevent her from recognizing her injury as a cause of action; such unique characteristics include one's mental state. See, e.g. , Dalrymple v. Brown, 701 A.2d 164 (Pa. 1997) (denying discovery rule for repressed memory syndrome); Molineux v. Reed, 532 A.2d 792 (Pa. 1987) (permitting defendants to assert limitations defense because plaintiff had no evidence of fraudulent concealment). This objective standard prevents Elizabeth from pursuing her claim. Her injury was not latent; therefore, it was not the latent nature of the injury that prevented her from knowing of it. It was her mental retardation and her illiteracy that were the causes for her failing to discover her injury. These characteristics are particular to Elizabeth and do not depend on the type of injury she suffered.

The Lakes now argue, however, that it might be possible for Elizabeth to meet the discovery rule's reasonableness standard, regardless of her mental retardation and illiteracy. However, the Lakes have alleged in this action that Elizabeth could not understand the nature and scope of the operation. In light of this representation of her inability to appreciate the nature and scope of sterilization surgery as a reasonable person would, we must conclude that Elizabeth could not meet the reasonableness standard. Moreover, because Pennsylvania law requires a plaintiff to exercise a reasonable amount of diligence and vigilance when pursuing a claim, see Redenz v. Rosenberg, 520 A.2d 883, 886 (Pa. Super. Ct. 1987), Elizabeth's invocation of the discovery rule is further undermined by the fact that she took no steps to inquire into the nature of her operation until almost two decades after it was performed. In addition, in determining diligence, we would again evaluate the adequacy of the inquiry by the reasonable person

9

standard, not by the standard of the mentally retarded and illiterate.

There is one other circumstance under which a plaintiff can escape the rigors of Pennsylvania's statute of 949<!>limitations: when the defendants have intentionally misinformed the plaintiff or concealed information from her so that they are estopped from invoking the statute of limitations. See Walters v. Ditzler, 227 A.2d 833 (Pa. 1967). As we noted above, however, the Lakes do not allege that the defendants intentionally misinformed Elizabeth about her sterilization.

Finally, we are unwilling to accept the Lakes' argument that we should distinguish existing Pennsylvania pr ecedent that prohibits relying on subjective mental characteristics to invoke the discovery rule on the "permanent" or "biological" nature of Elizabeth's mental state. As the defendants correctly point out, these ar e medical rather than legal distinctions. As such, they cannot serve as a basis for reinterpreting what seems to be clearly stated Pennsylvania law: mental incompetency does not toll the personal injury statute of limitations.

In sum, under the Pennsylvania statute of limitations, Elizabeth had two years from the date of her operation to bring her state law personal injury claims. Neither the state statutory tolling provisions, which do not authorize tolling for mental incompetency, nor the state discovery rule, which applies an objective standard for deter mining when an individual should discover a latent injury, af ford Elizabeth any relief from the conclusion that her state claims are time-barred by Pennsylvania's two-year statute of limitations. While this conclusion appears harsh, under principles of federalism and comity between state and federal courts, we must respect the state's decision to determine the appropriate policies, including the statute of limitations and their related tolling pr ovisions, for its own judicial procedures.

2. Federal Causes of Action Under Sections 1983 and 1985

The Lakes also assert that the defendants' r ole in permanently sterilizing Elizabeth gives rise to two federal

10

causes of action for violating her substantive due process right to procreate. See Skinner v. Oklahoma, 316 U.S. 535 (1942). Because neither S 1983 nor S 1985(3) contains a statute of limitations, we must rely on 42 U.S.C. S 1988, which guides our selection of the appropriate time period to fill the gap. Section 1988 requires us to use the statute of limitations for the state where the federal court sits unless its application would conflict with the Constitution or with federal law.7

In determining which state limitations period to use in federal civil rights cases, we look to the general, residual statute of limitations for personal injury actions. See Wilson v. Garcia, 471 U.S. 261, 276-80 (1985). W e must also incorporate any relevant state tolling rules. See Hardin v. Straub, 490 U.S. 536, 543-44 (1989). Thus, forS 1983 and S 1985 actions originating in Pennsylvania, we look to 42 Pa. C.S. SS 5524 and 5533. See Rose v. Bartle, 871 F.2d 331, 347 (3d Cir. 1989) (S 1983); Bougher v. University of Pittsburgh, 882 F.2d 74, 79 (3d Cir . 1989) (S 1985).

As we recognized in analyzing Elizabeth's state claims in Part III.B.1, Pennsylvania's statute of limitations requires all personal injury claims to be brought within a two-year time period and is not tolled for mental incompetence. Because Elizabeth's sterilization occurred well outside this

_____

7. Title 42 U.S.C. S 1988 provides, in relevant part:

        The jurisdiction in civil and criminal matters conferred on the
        district courts by the provisions of this T itle, and of Title
"CIVIL
        RIGHTS," and of Title "CRIMES," for the protection of all persons
in
        the United States in their civil rights, and for their vindication,
shall
        be exercised and enforced in confor mity with the laws of the
United
        States, so far as such laws are suitable to carry same into effect;
        but in all cases where they are not adapted to the object, or are
        deficient in the provisions necessary to fur nish suitable remedies
        and punish offenses against law, the common law, as modified and
        changed by the constitution and statutes of the State wherein the
        court having jurisdiction of such civil or criminal causes is held,
so
        far as the same is not inconsistent with the Constitution and laws
of
        the United States, shall be extended to and govern the said courts
        in the trial and disposition of the cause.

(emphasis added).

time frame, any injury she suffered would appear to be barred as untimely. This conclusion, however , is premature. We must first determine whether the state's tolling provisions themselves conflict with federal law and policy, a question that is not squarely governed by Wilson and Hardin.

Wilson "principally involves the second step in the process [of applying S 1988]: the selection of `the most appropriate' or `the most analogous' state statute of limitations to apply" to S 1983 claims. Wilson, 471 U.S. at 268. The policies that motivated Wilson, i.e., uniformity, certainty, and the minimization of unnecessary litigation, do not frame our analysis because we are instead concerned with S 1988's third pr ong: whether the state limitations statute conflicts with federal law and policy. See Hardin, 490 U.S. at 544 n.14 (concluding that Wilson's policies are "more pertinent to deter mine which state laws are appropriate than whether application of those laws fosters the policies of S 1983."). Similarly, although Hardin analyzed whether tolling statutes in general conflicted with S 1983's policies of compensation and deterr ence, it did not hold that courts should ignore whether a state's particular tolling provision itself conflicts with federal law and policy. We must still, then, decide whether Pennsylvania's tolling rule satisfies this inquiry. See Board of Regents v. Tomanio, 446 U.S. 478, 486 (1980) (requiring deter mination of whether the New York tolling rule contradicted federal law).

As a policy matter, SS 1983 and 1985(3) are designed to compensate victims whose federal constitutional or statutory civil rights have been violated and to pr event future abuses of state power. See Burnett v. Grattan, 468 U.S. 42, 53 (1984). As such, these remedial statutes strive to give victims the opportunity to sue for r elief. See id. at 55. In contrast, state statutes of limitations ar e not crafted to promote federal remedial policies. See Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 367 (1977) (noting that "[s]tate legislatures do not devise their limitations period with national interests in mind"). This disconnect means that, occasionally, the state statute of limitations must be modified to promote the federal inter ests at bar.

12

With this background in mind, let us look carefully at the federal claims that Elizabeth is asserting. We held in Lake I that the mentally retarded, as a class, are entitled to protection under civil rights laws such as S 1985(3) because

> [t]he fact that a person bears no responsibility for a handicap, combined with the pervasive discrimination practiced against the mentally retarded and the emerging rejection of this discrimination as incompatible with our ideals of equality convinces us that whatever the outer boundaries of the concept, an animus directed against the mentally retarded includes the elements of a class-based invidiously discriminatory motivation.

112 F.3d at 688 (quoting Novotny v. Great Am. Fed. Sav. and Loan Ass'n, 584 F.2d 1235, 1243 (3d Cir. 1978)) (internal quotation marks and brackets omitted). As we also pointed out, involuntary sterilization is one manifestation of this discrimination against the mentally incompetent. See id. at 688 (citing law review articles). Elizabeth's federal claims are based on the violation of her constitutional right to procreate. Consequently, her claims are the type that S 1985(3) and S 1983 are designed to protect.

Moreover, under the federal policy that the mentally retarded are a protected class, Elizabeth should not be denied her right to sue solely because of her mental retardation. In Elizabeth's case, her mental incompetency was the reason her guardians, who ought to have protected her, sought to sterilize her and the reason that the hospital performed the operation. Not allowing any tolling, even in an extraordinary situation such as this one, puts Pennsylvania's statute of limitations at odds with the objectives that S 1983 and S 1985(3) foster by barring an individual, especially a member of a protected class, who was deprived, as in this case, of her ability to bring a claim through her guardians, from seeking compensation and deterrence.8 Consequently, the rigidity of the Pennsylvania

_____

8. In Elizabeth's case, deterrence is of less concern because Pennsylvania now requires a court proceeding before guardians can consent to their ward's sterilization. See 20 Pa. C.S.A. S 5221(d)(1). See also In re Terwilliger, 450 A.2d 1376 (Pa. Super. Ct. 1982) (holding sterilization by guardian's consent requires court order).

13

statute of limitations in regard to mental incompetence, absent a guardian who will protect rather than jeopardize those rights, directly conflicts with Elizabeth's right as a mentally retarded person to remedy a violation of her constitutionally protected rights. We are thus not obligated to apply that state rule.

When the state tolling rules contradict federal law or policy, in certain limited circumstances we can turn to federal tolling doctrine. See Heck v. Humphrey, 997 F.2d 355, 358 (7th Cir. 1993) (recognizing equitable tolling applicable to S 1983 actions where state limitations provision conflicts with federal policy); Boos v. Runyon, 201 F.3d 178, 184 (2d Cir. 1999) (recognizing that tolling for a person's mental disability is "highly case-specific" but declining to apply in instant case); Grant v. McDonnell Douglas Corp., 163 F.3d 1136, 1138 (9th Cir. 1998) (permitting federal equitable tolling of a state limitations period for federal claims in exceptional circumstances but finding none present); Nunnally v. MacCausland, 996 F.2d 1, 4-5 (1st Cir. 1993) (remanding for factual determination as to whether alleged mental illness justified equitable tolling). Federal courts may toll statutes of limitations for federal laws where the plaintiff "in some extraordinary way has been prevented from asserting his or her rights." Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997) (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994)); see also Bowen v. City of New York, 476 U.S. 467, 480 (1986) (authorizing equitable tolling where consistent with congressional intent).9 The doctrine prevents a party from profiting from its own wrongdoing. See Oshiver, 38 F.3d at 1388.

Equitable tolling stops the statute of limitations from running when the date on which the claim accrued has

_____

9. Equitable tolling is appropriate in three general scenarios: (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum. See Oshiver, 38 F.3d at 1387. We are concerned in this case with only the second scenario, where extraordinary circumstances prevent a plaintiff from timelyfiling.

14

already passed. See id. Equitable tolling can be applied to suits brought under the federal civil rights statutes when the state statute of limitations would otherwise frustrate federal policy, see, e.g., Heck , 997 F.2d at 358, because as Wilson recognized, the "adopted" state rule operates "as a federal rule responsive to the need whenever a federal right is impaired." Wilson, 471 U.S. at 269. When a plaintiff requests federal equitable tolling but the facts underlying that request are disputed or unclear , a court may remand the case to determine if the facts actually support tolling. See Nunnally, 996 F.2d at 5-7. If Elizabeth's allegations prove on remand to be true, we conclude that in this situation, where a guardian conspir es to deprive a mentally incompetent person of her constitutional and civil rights, equitable tolling might be appropriate. Elizabeth would then be entitled to revive the two-year period that the Pennsylvania law provides for her to bring her claim. See Oshiver, 38 F.3d at 1389.

We are not, in remanding this case to the District Court, holding that a mentally incompetent plaintif f would never be bound by state statute of limitations provisions in federal civil rights actions or, alter natively, that she would be evaluated by a more lenient subjective test. Cf. Robinson, 107 F.3d at 1022-23 (recognizing that a liberal interpretation of equitable tolling exception would swallow the rule). In fact, we have previously held that mental incompetence is not per se a reason to toll the statute of limitations in federal actions. See e.g., Barr en by Barren v. United States, 839 F.2d 987 (3d Cir . 1988) (rejecting mental incompetence as reason to toll statute of limitations under Federal Tort Claims Act). Where we have permitted equitable tolling for mental disability in the past, the plaintiff's mental incompetence motivated, to some degree, the injury that he sought to remedy. See Eubanks v. Clarke, 434 F. Supp. 1022 (E.D. Pa 1977) (deciding to equitably toll the Pennsylvania statute of limitations for a mentally incompetent plaintiff who was involuntarily committed for entire limitations period).10

_____

10. The Eubanks court concluded that it was unreasonable to expect a mental ward inmate to pursue his claims and thus, denying him his

15

The unique facts of Elizabeth's claim distinguish her case from others where a plaintiff has ar gued for tolling based on mental incapacity. Generally, under a state law where there is no equitable tolling for mental incapacity, the guardian is expected to protect the war d's interests. Pennsylvania does not permit tolling for mental incompetency for this very reason:

> [T]he established procedures for the appointment of guardians afford sufficient pr otection to individuals who are non compos mentis that their claims will be instituted within the permissible period and thereby diminishes the risk that the rights of incompetents will be impaired by our holding that their disability does not toll the running of the statute of limitations applicable to actions for personal injury.

Walker, 146 A.2d at 291. The unusual aspect of this case, then, is that the guardians themselves, who should have been protecting Elizabeth's interests, in fact caused the injury to her. Thus, her case differs from the more typical one where a third party injures a mentally incompetent person and the guardian fails to bring the claim in a timely fashion. In the latter case, tolling would be inappr opriate because the guardian had failed to exer cise diligence. We must reiterate, however, that this is not a case based on state law for breach of fiduciary trust to r emedy a ward's injury caused by a guardian. This is a federal civil rights case seeking a remedy to a member of a pr otected class who is prevented by state law fr om tolling the statute of limitations because her guardian failed to pr otect her precisely because she was mentally retar ded.

_____

S 1983 action would contradict federal policy by insulating those who had denied his rights. Eubanks, 434 F . Supp. at 1032–33. Similarly, while we recognize that Elizabeth's situation is not so extreme, it nonetheless presents similar concerns because the absence of a guardian who could advocate Elizabeth's rights made it practically impossible for her to protect her rights. Thus, failing to equitably toll the
statute of limitations for Elizabeth would imper missibly allow the defendants to avoid responsibility for their actions simply through the passage of time.

16

Because of her mental incapacity, Elizabeth claims to have been unable to appreciate the injury that was done to her when she was sterilized. (We of course will remand to determine if that allegation is justified.) Apparently, she has not been lax in bringing suit because she could not recognize that there was cause to do so. In fact, she brought her suit within two years of lear ning from her gynecologist that she had been sterilized. Absent her request for a more searching physical examination, she would not necessarily have had a reason to suspect that she had been sterilized until a doctor so infor med her because the effects of a sterilization ar e not always physically observable.11 Thus, it would appear that she has acted diligently, at least on the facts she alleges. Permitting the tolling provisions of the state statute of limitations to bar her cause of action would frustrate the federal civil rights laws by barring a remedy to a pr otected person because the guardian, who under state law should have sought to vindicate that person, harmed her instead.

In sum, we are not equitably tolling Pennsylvania's statute of limitations solely because Elizabeth's mental incompetence prevented her from recognizing her injury when she was sterilized. Instead, as in Eubanks , we are tolling it due to the failure of the guar dian system. The persons, who should have protected Elizabeth because of her retardation, instead harmed her by having her sterilized so that she could not procreate. If her allegations prove true on remand, Elizabeth's claims should pr oceed.12 In this

_____

11. Tubal ligations do not necessarily af fect a woman's menstrual cycle or other aspects of her femininity. See L. Elizabeth Bowles, The Disenfranchisement of Fertile Women in Clinical Trials: The Legal Ramifications of and Solutions for Rectifying the Knowledge Gap, 45 Vand. L. Rev. 877, 909 (1992) (discussing consequences of tubal ligation); Estate of C.W., 640 A.2d 427, 432 (Pa. Super. Ct. 1994) (approving tubal ligation because, among other reasons, it would not affect C.W.'s menstrual cycle or feelings of femininity).

12. The defendants argue that Elizabeth had enough time after she left the custody of her father and stepmother to bring her case. We are not persuaded that, absent a guardian or other r epresentative of her interests, Elizabeth could be expected to advocate her own interests or even evaluate what course of action would be in her best interest. Thus, the fact that she left her parents' home does not, alone, preclude our application of federal tolling principles.

17

instance, equitable tolling would promote Congr ess's intent in enacting SS 1983 and 1985. It would give Elizabeth the opportunity she was denied when she was sterilized-- adequate representation of her inter ests -- and give her a chance to seek a remedy for her injury.

We hold, therefore, that the Pennsylvania statute of limitations for personal injury claims could, on these alleged facts, be equitably tolled until the time, perhaps the gynecologist visit in December 1993, when Elizabeth and her husband Justin learned, or should have become aware, that Elizabeth's sterilization procedur e left her permanently unable to bear children.13 W e will remand this case to the District Court to determine whether equitable tolling is appropriate under the standard we set out above.

IV. Loss of Consortium Claim

The Lakes also argue that the lower court decision to dismiss Justin's consortium claim should be r eversed. We have plenary review over the District Court's dismissal of Justin Lake's consortium claim for failure to state a claim. See Silverman v. Eastrich Multiple Investor Fund, LP, 51 F.3d 28, 30 (3d Cir. 1995).

The Magistrate Judge concluded that Justin's loss consortium claims were barred on substantive legal grounds because Elizabeth's injury occurr ed before the Lakes were married. See Sprague v. Kaplan , 572 A.2d 789 (Pa. 1990) (holding that consortium claims ar e only valid when a spouse is injured after the couple is married). On appeal, the Lakes argue that their case is distinguishable from Sprague because Elizabeth's injury is akin to a spouse's injury that develops over time. Thus, the discovery rule should also preserve Justin's derivative loss of consortium claim.

The Lakes argue that their claim falls within the scope of Vazquez v. Friedberg, 637 A.2d 300 (Pa. Super. Ct. 1994), which recognized that when the cause of action underlying

_____

13. Applying the equitable tolling doctrine to Elizabeth's federal claims, however, does not mean that we are making any decisions on the merits of her case.

a loss of consortium claim is tolled subject to the discovery rule, the statute of limitations for the loss of consortium claim is also tolled. See id. at 301-02. In Vazquez, although the injury that caused her husband's cancer occurr ed before their marriage, the court permitted the wife to assert a loss of consortium claim because the cancer that they discovered after their marriage, and not the initial injury, was the basis for her claim. See id. The Lakes assert that, because the harm Elizabeth suffers is her inability to have children, the loss of consortium claim is based on that injury rather than the initial sterilization.

We disagree. Even though we are tolling the statute of limitations for Elizabeth's federal claims, Sprague still bars Justin's consortium claim on substantive grounds. Once Elizabeth was sterilized, she was unable to have children. There is no subsequent harm, as in V azquez, arising from that initial injury. Moreover, even under the more general proposition that the loss of consortium claim, like the underlying federal civil rights claims, should be equitably tolled, the Lakes' argument also fails. Elizabeth and Justin were both aware of Elizabeth's sterilization in 1993, before their marriage in 1994. Therefore, the injury was discovered before, not after, their marriage, a scenario under which Sprague precludes suit.

V. Denial of Leave of Amend Complaint

Our final inquiry is whether the District Court should have allowed the Lakes' motion to amend their complaint a second time following remand in Lake I. We review the District Court's decision to deny the Lakes' r equest to amend for abuse of discretion. See In r e Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (citing Lorenz v. CSX Corp., 1 F .3d 1406, 1413-14 (3d Cir. 1993)).

Under the Federal Rules of Civil Procedur e, a plaintiff is entitled to amend her claim once; courts may grant subsequent amendments "when justice so requires." Fed. R. Civ. P. 15(a). While this Rule also r equires that leave to amend should be "freely given," a district court has the discretion to deny this request if it is apparent from the

19

record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party. See Foman v. Davis, 371 U.S. 178, 182 (1962). While a District Court has substantial leeway in deciding whether to grant leave to amend, when it refuses this type of request without justifying its decision, this action is "not an exercise of its discretion but an abuse of its discretion." Id.

As the Lakes note, the District Court's October 1998 order offered no explanation for denying their request, even though the Lakes filed their request for leave to amend on April 1, 1998. At that time, the Lakes alleged that they had additional facts that would enable them to withstand the defendants' motion to dismiss. As we learned at argument, however, the Lakes did not supply the District Court with a draft amended complaint, even though they had several months between the time that the Magistrate Judge issued his Report and Recommendation (filed March 10, 1998) and when the District Court issued its order (filed October 30, 1998) during which to draft one. Instead, the Lakes chose to wait until the District Court issued its order.

Despite their delay, the Lakes now urge us to reverse the District Court's decision as an abuse of its discretion because the District Court's order failed to explain why it denied their request to amend. Not providing a justification for a denial of leave to amend, however, does not automatically constitute an abuse of discretion as long as the court's rationale is readily apparent from the record on appeal. See 3 James Wm. Moore, et al., Moore's Federal Practice S 15.14[2] at 15-32 (3d ed. 1999), citing Pallotino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir. 1994) (noting that court failed to provide express reason for denial but only harmless error when apparent from record).

Moreover, some District Court local rules in our Circuit require that a plaintiff give a District Court a draft amended complaint so that it can review the proposed changes to determine whether "justice requires" the court to grant plaintiff's request. See Cindrich, et al., 1 Federal Civil Procedure Before Trial--3d Circuit 8:285 (1996) (discussing Local Rule 12(h) for District Court of New Jersey).

20

Obviously, without this draft complaint, the District Court cannot evaluate the merits of a plaintiffs' r equest. Here, as we stated above, the plaintiff failed to give the District Court a draft complaint to review. Thus, the court had nothing upon which to exercise its discr etion. Consequently, the District Court's lack of findings or justification do not make its denial of leave to amend improper, although such a statement would have made our review more straightforward. See Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 655 (3d Cir. 1998) (upholding District Court's denial of leave to amend despite absence of specific factual findings justifying denial); Kelly v. Del. River Joint Comm'n, 187 F.2d 93, 95 (3d Cir. 1950) (affirming lower court's summary refusal to permit amendment to a claim given plaintiff's failur e to provide court with a proposed amended complaint).

We conclude that the Lakes' failure to provide a draft amended complaint would be an adequate basis on which the court could deny the plaintiff's r equest. See Rolo, 155 F.3d at 655; accord Harris v. City of Auburn, 27 F.3d 1284, 1987 (7th Cir. 1994) (noting that the failur e to provide a proposed amended complaint demonstrates lack of diligence or bad faith). Moreover, we ar e inclined to give the District Court even broader discretion when, as here, the court has already granted the requesting party an opportunity to amend its complaint. See, e.g., DCD Programs, Ltd. v. Leighton, 833 F .2d 183, 186 n.3 (9th Cir. 1987).

## VI. Conclusion

For the foregoing reasons, we will vacate the District Court's order dismissing Elizabeth's federal claims and we will remand the case to the District Court for further proceedings consistent with this opinion. W e will affirm the dismissal of Elizabeth's state personal injury claims, as well as Justin's loss of consortium claim. Finally, we will affirm the District Court's decision to deny the Lakes' r equest to amend their complaint.

SLOVITER, concurring in part and dissenting in part.

I agree with the majority that Elizabeth Lake's state law claims are time-barred under the two-year statute of limitations in effect at the relevant time and that, under Pennsylvania law in effect at that time, the statute of limitations did not toll for either minority or incompetence. I also agree with Judge Roth's analysis concluding that Elizabeth's mental retardation does not pr ovide a basis for preserving her claim under Pennsylvania's tolling statute and that, while it may appear harsh, the state discovery rule does not afford any relief fr om this conclusion.1 Therefore, I join the judgment enter ed by the majority in those respects.

However, it is precisely because I agr ee with the majority's application of Pennsylvania's statute of limitations as barring Elizabeth Lake's Pennsylvania tort claim that I respectfully disagree with the majority's decision not to apply the then-applicable Pennsylvania tolling rules to bar Lake's federal claim filed under 42 U.S.C. SS 1983 and 1985(3). I believe that the Supreme Court's decisions in Wilson v. Garcia , 471 U.S. 161 (1985), and Hardin v. Straub, 490 U.S. 536 (1989), dictate otherwise.

In Wilson, the Court undertook to r esolve the varying interpretations by the federal courts of appeals regarding the appropriate state statute of limitations to be applied to civil rights actions, a conflict created because the Civil Rights Act does not include a specific statute of limitations governing actions brought under #8E8E # 1983 and 1985. The Court noted that because no suitable federal rule exists, S 1988 instructs that federal courts should select "the most appropriate" or "the most analogous" state statute of limitations to apply to the S 1983 claim as long as it is not inconsistent with the Constitution and laws of the United States. However, because of the numer ous and diverse topics and subtopics encompassed within the constitutional claims alleged under S 1983, "[a]lmost every S 1983 claim

_____

1. I also agree with the majority's affir mance of the dismissal of Justin Lake's loss of consortium claim and the District Court's decision to deny the Lakes' request to amend their complaint.

22

can be favorably analogized to more than one of the ancient common-law forms of action, each of which may be governed by a different statute of limitations." Wilson, 471 U.S. at 272-73. The Court opined that Congress would not have sanctioned an interpretation of the statute that would lead to applying different statutes of limitations to the various S 1983 claims arising in the same state. After considering the issue, the Court adopted the "characterization of all S 1983 actions as involving claims for personal injuries." Id. at 279.

The Court selected one statute of limitations to be applied for this purpose in order to minimize, if not eliminate, "the conflict, confusion, and uncertainty concer ning the appropriate statute of limitations to apply to this most important, and ubiquitous, civil rights statute." Id. at 266. Thereafter, in Hardin, the Court held that a federal court applying a state statute of limitations should give effect as well to the state's provision for tolling that statute of limitations. 490 U.S. at 539. The Court repeated its earlier statement in Wilson, 471 U.S. at 269 n.17, that "[i]n virtually all statutes of limitations the chr onological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application." (quoting Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 464 (1975) (emphasis added)).

I am concerned that the holding of the majority would detract from the very certainty the Court sought in Wilson. Thus, under Wilson and Hardin , to determine the statute of limitations, one need only examine the applicable state's personal injuries statute of limitations and deter mine whether that state would permit tolling under those circumstances. Under the majority's rule, even though the state would not have permitted tolling under its statute of limitations, tolling may be permitted in aS 1983 suit if, in the court's view, tolling would comport with the underlying purposes of the civil rights statute. Not only is this inconsistent with the important goals of unifor mity and certainty in application of the statute of limitations established by the Supreme Court but it is also inconsistent with the Court's reliance on the state to determine whether and when tolling should be permitted.

23

See Johnson, 421 U.S. at 464 ("In borr owing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the pr osecution of a closely analogous claim.").

In Wilson, the Court reasoned that tort actions constitute a major part of the volume of civil litigation in the state courts, and concluded that: "It is most unlikely that the period of limitations applicable to such claims ever was, or ever would be, fixed in a way that would discriminate against federal claims, or be inconsistent with federal law in any respect." 471 U.S. at 279. Accor dingly, application of the state's personal injuries statute of limitations "minimizes the risk that the choice of a state statute of limitations would not fairly serve the federal inter ests vindicated by S 1983." Id. Pennsylvania ultimately did allow tolling for mental disability; however, the majority would allow tolling a federal civil rights action whenever the federal court, not the state, determines that tolling should be applied.

The effect of the majority's holding is to open the possibility of damage actions under the Civil Rights Act against individuals more than 23 years after the event at issue. This is again inconsistent with the W ilson Court's expressed concern with allowing a federal cause of action to be "brought at any distance of time," noting that "[j]ust determinations of fact cannot be made when, because of the passage of time, the memories of witnesses have faded or evidence is lost." Id. at 271 (quotation omitted).

Although I appreciate the empathy for Lake that underlies this portion of the majority's decision, for the reasons set forth I feel compelled to dissent.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

24